# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ANGELA HENLEY,
        Plaintiff,

    v.                                                                                              Case No. 14-C-0059

C.R. BARD, INC., et al.,
        Defendants.

## DECISION AND ORDER

Angela Henley alleges that she was injured by a defective medical device manufactured and sold by the defendants, C.R. Bard, Inc., and Bard Peripheral Vascular, Inc. (collectively, "Bard"). After she filed her complaint, the Judicial Panel on Multidistrict Litigation transferred the case to the United States District Court for the District of Arizona for consolidated pretrial proceedings. Those proceedings have concluded, and the case has been returned to this court. Before me now are Bard's motion for summary judgment on the plaintiff's claims, Bard's motion to exclude certain opinions by one of the plaintiff's experts, and the parties' motions to seal certain materials filed in connection with these motions.

The motion for summary judgment is based on several grounds, but I will discuss only one of them—the statute of limitations—because it is dispositive. Moreover, because the plaintiff's expert testimony does not relate to the statute-of-limitations defense, I will deny the motion to exclude the testimony as moot.

## I. BACKGROUND

The plaintiff needed surgery in June 2010. At that time, she had recently been treated for a pulmonary embolism, a condition in which one or more arteries in the lungs

becomes blocked by a blood clot. Because of her medical history, the plaintiff's doctors recommended that she receive a medical device known as an inferior vena cava filter, or "IVC filter," prior to the surgery. This is a filter that is placed in a large vein (the inferior vena cava) that carries blood from the lower part of the body to the heart. Its purpose is to catch blood clots that form in the legs as they travel though the vein and prevent them from reaching the heart and lungs.

IVC filters can be placed in a patient temporarily or permanently. In the plaintiff's case, her doctors recommended that she receive a temporary filter—also known as a "retrievable" filter—that would be removed two weeks after the surgery. Bard manufactures and sells such a filter, known as the Bard G2 Filter. The filter is conical in shape and consists of a main shaft to which twelve struts (six "arms" and six "legs") are attached. Once the filter is implanted in the vein, its arms and legs open and anchor the filter to the walls of the vein. It looks like this:



On June 11, 2010, Dr. Satchidanand Hiremath implanted a Bard G2 Filter into the plaintiff's inferior vena cava. A short time later, the plaintiff began experiencing abdominal/pelvic pain, back pain, and right hip/thigh pain, which she attributed to the

filter. On July 5, 2010, during a follow up visit with one of her physicians, the plaintiff reported experiencing "some mid to right abdominal discomfort since the placement of the filter." Def. Prop. Finding of Fact ("PFOF") ¶ 10.

On July 12, 2010, another physician, Dr. Moises Yoselevitz, performed a procedure in which he attempted to retrieve the filter. However, he was unable to do so because the filter exhibited "significant tilting." Def. PFOF ¶ 11; *see also* Compl. ¶ 101 ("On or about July 12, 2010, Plaintiff underwent removal, but it was ultimately unsuccessful because of the significant tilt of the filter."). As of this date, the plaintiff knew that Dr. Yoselevitz could not retrieve the filter and that the filter was tilted. Def. PFOF ¶¶ 11–12.

On July 16, 2010, during a consultation with Dr. James Walker, Ms. Henley reported that "since the filter placement, she has experienced significant right lower back pain." *Id.* ¶ 13. Dr. Walker's consultation record notes: "Impression: Tilted inferior vena cava filter causing low back pain." *Id.*

On July 21, 2010, Dr. Walker performed a procedure in which he attempted to remove the filter. However, because of the "severe tilting of the device," he was unable to retrieve it. *See* Dr. Walker's Notes, ECF No. 41-5 at p. 20 of 32. The plaintiff describes the procedure as being "excruciatingly painful." Pl. PFOF ¶ 233. Like Dr. Yoselevitz, Dr. Walker noted after the procedure that the filter exhibited "significant tilting." Def. PFOF ¶ 14. He also noted that one of the legs was displaced "slightly cranial" and that the plaintiff experienced abdominal pain during the procedure. ECF No. 41-5 at p. 20 of 32.

After the procedure was over, Dr. Walker told the plaintiff that he was unable to retrieve the filter because it was tilted. Pl. Dep. at 89, ECF No. 41-6. However, he also told her that the filter could remain in her vein and would continue to prevent blood clots from reaching her heart and lungs. *Id.* The plaintiff was "appalled" by this news because she wanted the filter removed from her body. *Id.* The plaintiff was also "devastated" because she thought the filter was going to be temporary but now realized she was "going to be stuck with it for the rest of [her] life." *Id.* at 91.

On July 22, 2010, the plaintiff saw one of her other physicians. The office notes for this visit state that the plaintiff continued to experience abdominal discomfort that she attributed to the filter. The notes state that a CT scan showed no other abnormality that could account for the pain, that the plaintiff experienced abdominal pain during Dr. Walker's attempt to remove the filter, and that the plaintiff's abdominal pain had increased since Dr. Walker's retrieval attempt. ECF No. 41-5 at pp. 21–22 of 32. The plaintiff's physician recorded his impression that leaving the filter in place was "not an acceptable situation, since there is pain associated with it." *Id.* at p. 22. For this reason, the physician referred the plaintiff to a vascular surgeon to find out what could be done to remove the filter.

On September 20, 2010, the plaintiff returned to her physician following a consultation with a vascular surgeon. The office notes state that the surgeon advised the plaintiff that surgery to retrieve the filter would be a high-risk procedure. The surgeon advised the plaintiff that if her pain was under reasonably good control, then she should not undergo the procedure. The physician's notes state that the plaintiff reported that she was taking Vicodin for her pain and that it provided her with enough

4

pain relief to enable her to continue to work. It was also recommended that the plaintiff obtain a second opinion about the possibility of having vascular surgery to remove the filter.

On October 20, 2010, the plaintiff consulted with Dr. Eric Hohenwalter at Froedtert Hospital about removal of the filter. His consultation notes state that the plaintiff understood that the filter may be imbedded in the vein wall and not retrievable, but that she still wanted to undergo a third retrieval attempt. On November 5, 2010, Dr. Hohenwalter tried to remove the filter. However, like the previous two attempts, this one was unsuccessful. The notes from the procedure state that the filter itself had fractured.

As the above chronology reveals, by November 5, 2010, the plaintiff knew that the defendants' filter was tilted and likely not retrievable. She had undergone three unsuccessful procedures to remove the filter, one of which caused her excruciating pain. She also believed that the filter was causing her to experience abdominal pain, and the plaintiff's physicians thought that the filter was the likely source of her pain. However, the plaintiff did not commence this action until January 17, 2014, more than three years after the last unsuccessful attempt to remove the filter. The defendant contends that this was too late, and that therefore her claims are barred by the statute of limitations.

## II. DISCUSSION

### A. Motion for Summary Judgment on the Statute of Limitations

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, I view the evidence in the

light most favorable to the non-moving party and must grant the motion if no reasonable juror could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986).

The parties agree that Wisconsin law applies to this case, that the applicable statute of limitations is three years, *see* Wis. Stat. § 893.54, and that the plaintiff commenced this action more than three years after the third unsuccessful attempt to retrieve the Bard filter. The parties' dispute centers on when the plaintiff's claim accrued. According to the defendants, her claim accrued no later than November 5, 2010, the date of the final retrieval attempt. But the plaintiff contends that, under the "discovery rule," her claim did not accrue until late 2013.

Under the discovery rule, "a cause of action will not accrue until the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, not only the fact of injury but also that the injury was probably caused by the defendant's conduct or product." *Borello v. U.S. Oil Co.*, 130 Wis. 2d 397, 411 (1986). In the present case, a related principle, known as the "single-injury rule," is also relevant. Under this rule, "the appearance of the first compensable injury starts the statute of limitations running for all claims based on the tortfeasor's single course of conduct, even for future injuries that may be difficult to predict." *See Howard v. Philip Morris USA, Inc.*, 98 F. App'x 535, 539 (7th Cir. 2004) (collecting Wisconsin cases). In other words, "a later injury from the same tortious act does not restart the limitations period." *Id.*

The plaintiff contends that her claim did not accrue until late 2013 because, until then, she believed that although the Bard filter had tilted it was safe to leave it in her body. She notes that even after three failed retrieval attempts, her doctors had assured

6

her that the filter was safe to leave in place. However, in late 2013, the plaintiff met with an attorney "and her medical records were reviewed." Pl. Br. in Opp. at 6, ECF No. 49.[1] This attorney apparently told the plaintiff that "the tilted filter in fact could *not* be safety [sic] left in place." *Id.* (emphasis in original). Moreover, the plaintiff claims that she learned for the first time after she filed this suit that one of the filter struts had fractured and migrated to her lung. *Id.* at 7; Pl. PFOF ¶ 244.[2]

I will assume for purposes of summary judgment that a person exercising reasonable diligence would not have discovered that it was unsafe to leave the filter in place or that a filter strut had fractured until late 2013. However, by late 2010, the plaintiff was already aware that the Bard filter had injured her in other ways. In July 2010, after the first failed attempt to retrieve the filter, the plaintiff's doctors told her that the filter was significantly tilted. At that point, she knew that there was a problem with the filter. She then endured two more unsuccessful retrieval attempts, one of which caused "excruciating pain." Pl. Dep. at 88. During this time, the plaintiff believed that the filter was causing her to experience abdominal pain, and the office notes from the

---

[1] The plaintiff has not filed evidence to support her factual assertions that she met with an attorney in late 2013 and that someone (presumably the attorney) reviewed her medical records at that time. The plaintiff's proposed findings of fact cite to the plaintiff's own declaration, *see* Pl. PFOF ¶ 246, but no such declaration is on file with the court. Thus, these are not facts that I may consider in opposition to the defendants' motion for summary judgment. *See* Fed. R. Civ. P. 56(c)(1)(A) (factual assertions must be supported by citations to "materials in the record"). However, as discussed in the text, even if the plaintiff had properly supported her factual assertions, the defendants would still be entitled to summary judgment.

[2] The materials cited in support of the plaintiff's factual assertion that she learned for the first time after filing this suit that a strut had fractured and migrated to her lung are not in the record. Thus, I may not consider this fact. *See* Fed. R. Civ. P. 56(c)(1)(A). But again, even if I were to consider it, the defendants would be entitled to summary judgment.

7

plaintiff's treatment reflect that her doctors thought that the filter was a likely source of her pain.[3] Moreover, even though the plaintiff's doctors told her that it was safe to leave the filter in place permanently, she was "appalled" and "devastated" by the news that the filter could not be retrieved. *See* Pl. Dep. at 89, 91.

Thus, by November 2010, the plaintiff had discovered a compensable injury—the significant tilting of the filter, which had resulted in pain, suffering, and medical expenses and the inability to retrieve the filter. Moreover, a reasonable person in the plaintiff's position would have known at that time that this injury was probably caused by the defendants' product. The plaintiff knew that it was the defendants' product that had tilted, and she does not claim that she reasonably thought the tilting was caused by a doctor's error rather than by a potential defect in the filter itself. Accordingly, by November 2010, the plaintiff's claim for compensation had accrued. And under the single-injury rule, the limitations period did not restart when the plaintiff later discovered that a strut had fractured and that leaving the filter in place was more dangerous than she thought. Thus, the plaintiff's claim is barred by the statute of limitations.

In her brief, the plaintiff relies heavily on the Wisconsin Supreme Court's decision in *Borello v. U.S. Oil Co.*, 130 Wis. 2d 397 (1986). In that case, the defendants manufactured a furnace and installed it in the plaintiff's home. Soon after it was

---

[3] In her proposed findings of fact, the plaintiff states that no doctor has ever confirmed that her abdominal/back/hip pain is related to the filter. *See* Pl. PFOF ¶ 230. However, the material she cites in support of this factual assertion is not in the record. Thus, I may not consider this factual assertion in deciding the motion for summary judgment. *See* Fed. R. Civ. P. 56(c)(1)(A). In any event, even if the plaintiff's pain was not caused by the filter, she still experienced other compensable injuries in 2010, including the pain from the retrieval attempts and the medical expenses associated with those attempts.

8

installed, the plaintiff noticed a bad odor and experienced symptoms such as dizziness and headaches. The plaintiff immediately attributed her symptoms to the furnace, but when she reported her symptoms to her doctors, they assured her that the furnace was not to blame. A doctor eventually attributed the plaintiff's symptoms to the furnace, but by that time more than three years had passed since the furnace was installed and the plaintiff began to think that the furnace was to blame for her injuries. The defendants thus argued that the case was barred by the statute of limitations. However, the Wisconsin Supreme Court held that "a subjective layperson's belief" that a product is the cause of her injury does not start the limitations period in cases where "the cause and effect relationship is not readily apparent." *Id.* at 412. The court further held that the plaintiff was entitled to rely on the advice of her doctors, who told her that her belief that the furnace was the cause of her illness was incorrect. The court wrote that "[a] person who has used reasonable diligence to secure medical advice should be given the protection of one who is 'blamelessly ignorant', even though a prior hunch later proved to be correct." *Id.* at 414 (citation omitted). The court concluded that the limitations period did not begin to run until the plaintiff had "a basis for objectively concluding" that the defendants' product "was probably the cause of her symptoms," which did not occur until a doctor diagnosed the plaintiff with an illness caused by the furnace. *Id.* at 414–15.

In the present case, the plaintiff cites *Borello* in the course of arguing that, until late 2013, she was "blamelessly ignorant" of the facts that the filter had fractured and migrated and could not safely be left in place. However, as discussed above, the plaintiff was aware that the filter had tilted and caused *some* compensable injury by

9

November 2010. And under the single-injury rule, the plaintiff's knowledge of some injury triggered the limitations period even though she had not yet discovered the injury's full magnitude. *See Pritzlaff v. Archdiocese of Milwaukee*, 194 Wis.2d 302, 317 (1995) (a plaintiff's unawareness of "additional harm" only creates uncertainty as to the amount of damages and does not toll the period of limitations). Thus, *Borello* does not help the plaintiff here. It would be relevant only if, in November 2010, the plaintiff did not have an objective basis for concluding that the filter had caused her an injury. But she did. By that date, her doctors had told her the filter was tilted and not retrievable, and she had undergone three unsuccessful retrieval procedures.

In her proposed findings of fact, the plaintiff states that "[a]t no time" did any of her treating physicians tell her that the Bard filter was defective or causing her an injury. *See* Pl. PFOF ¶ 245. However, as discussed, her doctors told her that the filter had significantly tilted and that this was why the retrieval attempts had failed, which was enough to start the running of the statute of limitations. The plaintiff's doctors were not her lawyers, and thus she could not reasonably rely on them for advice on whether the filter was legally defective or whether she had suffered a legally compensable injury. Moreover, the discovery rule does not defer claim accrual until a plaintiff decides to see a lawyer to learn whether she has a legally viable claim. *See* American Law of Products Liability 3d, § 47:40 ("The discovery rule does not require a plaintiff to understand all the legal consequences of the claim"; rather, it "imposes a burden upon the claimant to exercise, within the limitations period, reasonable diligence in ascertaining the operative facts and whether the injury is legally compensable"). Here, the plaintiff knew the operative facts of her claim by November 2010 and could have sought legal advice at

that time if she wished to consider bringing a claim for compensation. But for unidentified reasons, she waited until late 2013 to consult an attorney. The discovery rule does not excuse this delay in seeking legal advice.

In short, the undisputed facts in the record show that, by November 5, 2010, the plaintiff knew that the Bard filter was significantly tilted, that the tilting had caused pain, suffering, and medical expenses, and that the tilting had made the filter irretrievable. Thus, under the discovery rule, her claim accrued by that date. Moreover, under the single-injury rule, the statute of limitations did not restart when the plaintiff later learned that a filter strut had fractured and that the filter could no longer safely remain in her body. Because the plaintiff did not commence this action until more than three years after her claim accrued, it is barred by the statute of limitations. Accordingly, the defendants' motion for summary judgment will be granted.

## B. Motions to Restrict Filings

In the course of briefing the defendants' motion for summary judgment and motion to exclude the opinions of the plaintiff's expert, the parties filed various materials they claim are confidential. They also filed motions to restrict these materials from public review. The motions to restrict the filings are unopposed, but because I have an obligation to the public to ensure that court filings remain open to public review unless good cause for restricting them is shown, I must still decide whether the materials may be restricted. *See, e.g., Baxter Int'l Inc., v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002).

Two of the motions to restrict filings relate to materials filed in connection with the defendants' motion to exclude the opinions of the plaintiff's expert. *See* ECF Nos. 37 &

46. Because I granted the defendants' motion for summary judgment based on the statute of limitations, I did not consider the motion to exclude the expert testimony and will deny it as moot. Thus, I did not review the allegedly confidential materials, and they in no way affected my decision on the motion for summary judgment or on any other matter. Therefore, they may remain restricted. *See Baxter*, 297 F.3d at 545 (only documents that "underpin the judicial decision" are open to public inspection); *see also City of Greenville, Ill. v. Syngenta Crop Protection, LLC*, 764 F.3d 695, 698 (7th Cir. 2014) (the public has no right to access documents that "cannot conceivably aid the understanding of judicial decisionmaking").

Another motion, *see* ECF No. 53, seeks to restrict a single document, Exhibit HH, which is an engineering test report relating to the Bard filter. The defendants contend that this report qualifies as a trade secret. *See Baxter*, 297 F.3d at 546. Because I resolved the defendants' motion for summary judgment based on the statute of limitations, I did not consider this report or any other trade-secret information relating to the design, testing, or functioning of the filter itself. Thus, these materials may remain restricted without a showing of good cause. *Id.* at 545; *City of Greenville*, 764 F.3d at 698. Such materials include several exhibits the defendants filed with their motion for summary judgment and which are the subject of a separate motion to restrict, namely ECF Nos. 41-15, 41-16, 41-19, 41-20, and 41-21.

The parties' remaining two motions to restrict, ECF Nos. 40 & 48, are problematic. First, both motions seek to restrict the plaintiff's medical records, the plaintiff's entire deposition, and the entire depositions of some of the plaintiff's doctors on the ground that they contain the plaintiff's medical information. However, the plaintiff

placed her medical history in issue when she filed this suit, and the parties cite no case suggesting that a person who chooses to use the public courts to litigate a claim relating to her health is entitled to shield her health information from public review. Accordingly, no document may remain restricted simply because it relates to the plaintiff's medical history. The plaintiff's medical records, her deposition transcript, and the transcripts of the depositions of her treating physicians will be made available to the public. The Clerk of Court will be directed to remove the restrictions on ECF Nos. 41-4, 41-5, 41-6, and 41-7.

A second problem is that the plaintiff's motion to restrict is vastly overbroad. It seeks to restrict *everything* she filed in opposition to the defendants' motion for summary judgment—her entire brief, her entire proposed findings of fact, and the full contents of every exhibit she submitted. The plaintiff has not shown that the entire contents of her summary-judgment response reveal trade secrets or other information that may be restricted from public review, and the local rules of this court require parties to redact confidential information from their documents rather than file entire documents under seal. *See* Gen. L.R. 79(d)(2). In any event, the plaintiff has not shown good cause for restricting *any* part of her response. Her motion simply asserts in conclusory fashion that the response contains trade secrets and health information. Moreover, the defendants did not file a response to the plaintiff's motion in which they attempted to show that the materials filed by the plaintiff contain their trade secrets. *See* Gen. L.R. 79(d)(3) (allowing party who did not file motion to restrict to file response brief demonstrating good cause). Thus, no good cause has been shown, and I will deny the plaintiff's motion to restrict. However, before directing the Clerk of Court to unseal the

plaintiff's response materials, I will grant the defendants a second opportunity to demonstrate that some of the materials contain their trade secrets. They may do so by filing a fresh motion to restrict the relevant materials and attaching redacted versions of the materials in which only the trade secrets are redacted. The motion must be filed within 21 days of the date of this order. If the defendants do not file such a motion, I will assume that they agree that the materials may be unsealed.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the defendants' motion for summary judgment (ECF No. 39) is **GRANTED**.

**IT IS FURTHER ORDERED** that the defendants' motion to exclude certain opinions by Robert M. McMeeking, Ph.D., (ECF No. 38) is **DENIED** as **MOOT**.

**IT IS FURTHER ORDERED** that the defendants' motion to restrict certain exhibits in support of their motion to exclude certain opinions by Robert M. McMeeking, Ph.D., (ECF No. 37) is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion to restrict Exhibit I in opposition to the defendants' motion to exclude certain opinions by Robert M. McMeeking, Ph.D., (ECF No. 46) is **GRANTED**.

**IT IS FURTHER ORDERED** that the defendants' motion to restrict Exhibit HH (ECF No. 53) is **GRANTED**.

**IT IS FURTHER ORDERED** that the defendants' motion to restrict certain materials filed in support of their motion for summary judgment (ECF No. 40) is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted to the extent that ECF Nos. 41-15, 41-16, 41-19, 41-20, and 41-21 may remain restricted. The motion is

denied to the extent that the Clerk of Court shall remove the restrictions from ECF Nos. 41-4, 41-5, 41-6, and 41-7.

**FINALLY, IT IS ORDERED** that the plaintiff's motion to restrict the materials she filed in response to the defendants' motion for summary judgment (ECF No. 48) is **DENIED**. However, the Clerk of Court shall not immediately remove the restrictions from the associated documents. Instead, the defendants shall have **21 days** from the date of this order to show good cause for restricting parts of the plaintiff's response materials. If the defendants contend that any document contains confidential information, they must attach to their motion a redacted copy of the document in which only the confidential information is removed.

Dated at Milwaukee, Wisconsin, this 4th day of December, 2019.

s/Lynn Adelman<br>
LYNN ADELMAN<br>
United States District Judge